Good morning, your honors. My name is Michael Donahoe. I'm here on behalf of my client, Mr. Jordan. I'll call him Mr. Jordan. We bring a confession claim to the court today involving a process where this juvenile was accompanied by his aunt to the FBI office on the Indian Reservation and set up for the purposes of taking a polygraph examination. The aunt was present during that entire process, inquired of the agent what the process would be, and was an interested individual in the process. The FBI agent then indicated to the aunt that it probably would be necessary for her to leave, so she did depart. The young man was polygraphed in several sessions, was in the room for some four hours with the FBI agent, and eventually delivered a written confession. We moved to suppress that confession and did have a hearing before Judge McCormick to determine the guilt of the individual, of the juvenile, and subsequently the juvenile was sentenced in a juvenile disposition hearing. We're here today to ask the court to visit the issue of suppression of the confession and to rule it inadmissible for several reasons, chief among them being that the aunt did not understand fully what the polygraph process would be. It was her categorical assertion at the hearing that she understood that the questions that were going to be put to this youngster were going to be gone over with him on the front end of the process, and at the termination of the process, but at no point in time was it made clear to Jordan's aunt that some kind of post-interrogation process was going to go on in her absence. There are several problems with this, some of them being it's not clear what statutory, what constitutional provision you're relying on, but there was a Miranda waiver while she was there and which she witnessed, right? Now, it's clear that even if he wasn't in custody at the time, he did waive more than simply whatever set of questions he did agree to more than simply the polygraph. He agreed to a broad waiver with regard to questioning, didn't he? No, I don't think so, Your Honor, and I think that's probably the crux of the argument here. I'd like to address the first concern first, though, what constitutional provision we're relying on. I did fold into these papers on the front end the original motion to suppress an argument that we were dealing with of sorts of Fourth Amendment claim here, and I've developed that further in the context of the briefing before this Court, trying to indicate that the administration of that polygraph examination is a very serious matter. This is not just a process whereby an individual comes into a room and is questioned about a prior historical event. He's hooked up to a machine, his respiration is monitored, his breathing patterns, those electrodes discover things that are internal within the human body. That brings into play here the Fourth Amendment, and that's why we rely on the traditional consent cases. This consent must be fully developed and fully informed, and there is no wise, in this explanation by this FBI agent, that there's going to be post-interrogation questioning. And I think it makes a tremendous difference, respectfully, Your Honor, that we're dealing with an individual that is 16 years old. This is not a situation where this young man presented himself or the FBI talked to him out of his parents' presence or out of his guardian's presence and took the confession. This was a staged event where Agent Deku went in the first instance to the boy's house. That's part of the history of this case. The aunt was present then. The request was made, could we submit Jordan to a polygraph examination? That was done. That date was set. The aunt presented herself. These were interested in the case. And I think it makes a tremendous difference, respectfully, Your Honor, that we're dealing with an individual that is 16 years old. And I think it makes a tremendous difference, respectfully, Your Honor, that we're dealing with an individual that is 16 years old. In retrospective of the result, we're going to conduct a post-test questioning session on the boy to exact his – with the intention of exacting the confession. That was not the explanation. What I'm trying to convey here – and it's difficult, maybe. Maybe it's wispy. I don't know. But what we tried to develop in this record was the aunt believed that she was submitting the boy to the test and nothing more. All right. But the same reason – Well, the Supreme Court's addressed that issue in the Wyrick case. That is to say that the post-test questionings were within the scope of the consent to question, to go through the polygraph. And they have. And that's a Sixth Amendment decision, and that's a provision that I'm not relying on here. I'm not saying that this boy had a Sixth Amendment right to counsel. I'm saying that he had a right to have his aunt there, the government respected that, and she was there and participated fully to the best of her ability with the information that she had. And she was not given all the information. Let's change the facts a little. But the Fourth Amendment thing, it seems to me, washes for the reason I stated. So you need to find some other constitutional ground for your objection to the questioning as opposed to the polygraph. You're not objecting to the polygraph. Well, if I have to find another ground, I'll go to the voluntariness aspect. The consent's not fully informed. That's why the Fourth Amendment here is so pivotal. If the consent's not fully informed, those provisions work in tandem. One does not necessarily succeed under the Fifth Amendment claim and get the confession in because the Miranda waivers were given or obtained. That's clearly the law here. So what's the involuntariness? The involuntariness is that the explanation of how this process would play was not adequate and fully informed. It was deceptive. The aunt left the room with the aunt. But unfortunately, we seem to have approved the deceptive questioning. But not in the context of a juvenile. I think the standard needs to be heightened here. And that's why this case presents a novel and significant issue. The mother let the government comes to the family and says, we want to test this boy. And she says, okay. But there's not an adequate explanation of the entire process to warrant taking that written confession at the conclusion of this process and using it against this boy in the context of the trial. It's just not fair. You know, the government made an argument below before Judge Haddon, well, you know, we didn't need to do any of this. We could have questioned him out of his aunt's presence on the front end. We didn't have to involve her. This was all gratis and gracious on our part. Well, in reply, we said to Judge Haddon, that's not fair. You don't engage the family here and explain a process to them and say it's going to work in one type of fashion, and then change the rules after the woman departs. Remember? Well, did they ever say there will be no questioning after the polygraph exam is finished? No, Your Honor. But he didn't say that there was going to be questioning either. So they didn't change the rule. You just say they didn't fully inform him over that. Correct. I'll concede that, that they didn't fully inform the woman. And I made it a point when the aunt was on the stand at the suppression hearing, excuse me, to have her say, had she known she would have returned, had she known that there was going to be post-testing questioning, she would have returned and sat with the boy. And the agent was clear that her absence was only required for purposes of the testing proper. She clearly was entitled to be there when the boy was questioned. And would have given him advice. And I'm saying that had that aunt been there at the conclusion of that process to help him out in the ways that she helped him out before, in arranging for the test and taking him to the test, in having the test explained, we wouldn't be here. What is the basis for saying that she was entitled to be there? I'm sorry, Your Honor? What is the basis for saying that she was entitled to be there? Because the agent says that I think in his explanation, in his original explanation, that it's protocol for third parties not to be in the room during the testing process. I know, but on what basis did she have the right to be there not during the polygraph? Because the government invited her into all the other processes. But not because there's any constitutional reason or statutory reason or anything else? Well, I think they set that process in motion. I'm sorry? They set that process in motion. They invited her, fully invited her participation in all aspects until it got down to crunch time and they wanted to question her. I see that my time is running short here, and I'd like to reserve it. Your time is not running short. It's over. Sorry. Thank you. So we'll give you, even though your time is over, we'll give you a minute for review. All right? Thank you. We'll hear from the government. Thank you, Your Honor. Good morning, Your Honors. My name is Lori Sook. I'm an assistant U.S. attorney in Billings, Montana. I was trial counsel in this case. The government frames this issue differently. We frame it the same way that every court that has addressed the issue of post-polygraph questioning has framed it, as a Fifth Amendment question and whether the totality of the circumstances demand that this confession be suppressed. And we ask the court to not do that and to find that Judge Haddon did not clearly err in determining that the totality of the circumstances amount to this confession being voluntary. We start with the premise that this juvenile was not in custody or under arrest in any way. And, yes, Miranda was given and the guardian was advised and invited into the process, but that is clearly by protocol and clearly gratuitous. There is no constitutional or legal basis for that requirement. It should be helpful to the government because there was an agreement to answer questions in general, not simply – and it was advised about the fact that he could not answer the questions in general, not just the policy. Absolutely, Your Honors. And to make clear on the record, the Miranda was not only given to the juvenile with the guardian present. Both were presented with the Miranda form and signed it. So the Miranda waiver was executed orally and in writing by both the juvenile and the guardian. And to be clear about what Special Agent Smadala advised about the process, that is, it is clear that he advised not only that he was going to engage in a polygraph process, but also there would be questioning discussion after the polygraph. I quote, we're going to start with a pretest where I'm going to explain the polygraph to this. In this case, your nephew. And explain to him how that process works so that he understands what all the components are, how each component operates, as well as I'm going to review all the questions that he has. After that, we're going to take examinations. At which point, after the examinations, we're going to sit down. We're going to talk about the results of the test and determine whether or not further testing is needed. That's an excerpt of Record 68. The law is clear that if in the situation where individuals are in custody and a Miranda waiver is required, that they do not have to be re-Mirandaized. There's only been one case out of this circuit, the Gillyard case, that held differently. And that was on the basis of the fact that it was not a continual interview, but the polygrapher was different from the people who interviewed. It was held by the court to be two different interview processes. We don't have a juvenile in custody here, but we have a juvenile and a guardian who were advised of this warning. And then the juvenile was, yes, questioned after the polygraph testing. It's not required when a person is in custody. It certainly should not be required when a person isn't. And even though this is a juvenile, Your Honor, the special agent in charge here did recognize the vulnerability, if you may, of a juvenile by inviting the guardian there and having the guardian advised. This is a Fifth Amendment issue, Your Honors. The voluntariness of this confession is clear. Judge Hatton did not clearly err in finding so. In my brief, I've delineated specifically all the findings abundantly supported by the record that Judge Hatton found to render this confession admissible. We'd ask you to find it so. I'd end there unless there are questions from the court. Okay. I don't see anyone with questions, so thank you. Thank you, Your Honors. Okay. Mr. Donahoe, your time was up, but we will give you a minute or two minutes if you need it for a rebuttal argument. I appreciate that, Your Honor. I won't take all that time. I will indicate that, as a factual matter, Agent Deku was not the administrating agent of the polygraph. She does testify at the trial that she took the confession, which is Exhibit 3, and that she wrote out the questions and the boy wrote out the answers. So we do have a change in personnel here. So that's a wrinkle. But ultimately, I think that if Your Honors are not persuaded by the fact that this involves a Fourth Amendment issue, nonetheless, the government should be held to the higher standard because they initiated it. If they wanted the participation of the aunt, the aunt should have been fully informed. It's no fair, I'll say. It's no fair to involve the aunt in the process and do so halfheartedly and not give her all of the information. What about the government's recital of some questions or statements in the record indicating that it was said there would be questioning about the results of the test? And I think that the word questioning is not in that quote. And I think that that needs to be read very carefully. And it needs to be contrasted against the sentence that precedes it that says that the questions, all of the questions will be gone over prior to administration of the test and the results will be discussed. And to me, the most disturbing part of this is that the boy was told that the test wasn't going so well, which he presumably interpreted to mean that he was failing it. And he wasn't. I understand it was carefully constructive wording. But the problem is that there's a case law that seems to say even if they were flat-out lying, it wouldn't matter as to voluntariness or it certainly wouldn't be dispositive. And I understand that, Your Honor. But I think that the situation, the analysis should change given that it's juvenile. And the last point I wanted to address that was raised by the United States was the custody aspect of this. Sure, they came voluntarily and presented themselves to the FBI office, the aunt and the boy. But when she was asked to depart and she left the building, the boy was stuck there. So in a manner of speaking, he couldn't get out of that room until his ride came back. And she could have been summoned at any time during that process. She could have been summoned back to that room. Thank you, Your Honor. Thank you, sir. All right. United States v. Jordan shall be submitted.
judges: Gould, Berzon, Schwarzer